UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

600 SUMMER STREET (NY) LLC,

                Plaintiff,      :  20-cv-3957

                v.           :  COMPLAINT

NOAH SYNDERGAARD,

                Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        600 Summer Street (NY) LLC ("600 Summer"), by its counsel, Slarskey LLC, and for its Complaint alleges as follows:

**Nature of Action**

        1.      This is an action for breach of contract arising out of a lease between 600 Summer, the lessor, and Defendant Noah Syndergaard, the lessee, for the penthouse apartment located at 116 Hudson Street, New York (the "Lease" and the "Leased Premises").

        2.      The Lease was executed by both 600 Summer and Syndergaard on or about February 20, 2020 — to run from March 20, 2020 through November 30, 2020 — and approved by the condominium board at 116 Hudson Street. Once the Lease was executed, 600 Summer prepared the Leased Premises so they would be ready for Syndergaard on the agreed-upon move-in date, including by purchasing furniture requested by Syndergaard's team.

        3.      Syndergaard however, treated the binding Lease like an option. When — after execution, delivery, and approval of the Lease — he decided not to take possession of the Leased

Premises, Syndergaard repudiated and abandoned his obligations under the Lease, refusing to take possession of the Leased Premises, and declining to make any of the required payments.

4. Under the terms of the Lease, Syndergaard remains obligated to pay 600 Summer $27,000 per month, for a total of $225,000, plus a $17,000 commission to the real estate broker, and additional related fees. The Lease also includes a provision for the payment of costs and reasonable attorneys fees in the event it is necessary for 600 Summer to bring suit in connection with Syndergaard's default under the Lease. 600 Summer accordingly seeks damages in an amount that exceeds $250,000, plus prejudgment interest, and recovery of its costs and attorneys fees incurred in litigating this dispute.

## Parties

5. 600 Summer (NY) LLC is the record owner of 116 Hudson Street, is a limited liability company formed under the laws of the State of New York, with its primary place of business in New York City, and a citizen of the State of Connecticut. 600 Summer's sole member is Marjo, LLC a limited liability company formed under the laws of the State of Connecticut. Marjo, LLC's sole member, in turn is Marshall Goldberg, a trustee for the benefit of Jon Goldberg. Marshall Goldberg is a natural person, and citizen of the State of Connecticut.

6. Noah Syndergaard is a citizen of the State of Texas. His address is 3911 Gilbert Ave., Apt. F., Dallas TX, 75219-3918.

## Jurisdiction and Venue

7. This Court has jurisdiction over this matter (i) pursuant to 28 U.S.C. § 1332(a)(1) because it arises between citizens of different States, (ii) pursuant to 28 U.S.C. § 1332(b) because the amount to be recovered is in excess of $250,000, plus attorneys fees, and 9% prejudgment interest under New York law.

8. This action is properly brought in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and a substantial part of property that is the subject of the action is situated in this District.

## Detailed Allegations

9. 600 Summer owns property located in the heart of Tribeca, at 116 Hudson Street in Manhattan. 116 Hudson Street is an exclusive property: the penthouse apartment is a 2,700 square foot duplex, with three bedrooms, three large terraces, high-end architectural design, and designer finishes.

10. In early 2020, 600 Summer listed the penthouse as available for rent. Syndergaard's agent and representative visited the Leased Premises, with 600 Summer's real estate agent, and expressed interest in leasing the premises.

11. The parties quickly reached agreement on price and term, with minimal negotiation: Syndergaard agreed to a term of March 20, 2020 through November 30, 2020, and agreed to pay $27,000 per month as rent.

12. 600 Summer prepared the Lease based on these terms, and based on the Standard Form of Condominium Apartment Lease published by The Real Estate Board of New York. A copy of the executed Lease is annexed as Exhibit 1.

13. Among the notable terms standard to this form, Section 16(B) provides "[i]f Tenant moves out of the Apartment (abandonment) before the end of this Lease without the consent of the Owner, this Lease will not be ended. Tenant will remain responsible for each monthly payment of Rent and Additional Rent as it becomes due until the end of this Lease."

14. Section 17 provides for Tenant defaults under the Lease, including if the tenant "fails to carry out any agreement or provision of this Lease," or "does not take possession or move into the Apartment fifteen (15) days after the beginning of this Lease," and further provides that if Tenant does not "correct, or begin to materially correct a default within ten (10) days" after being notified of such default, the Lessor has the right to terminate the Lease.

15. Section 18 provides that, after termination of the Lease for Tenant default, "Whether the Apartment is re-rented or not, Tenant must pay to Owner as damages (i) the difference between the Rent in this Lease and the amount, if any, of the rents collected in any later lease of the Apartment for what would have been the remaining period of this Lease;" and "(ii) Owner's expenses for attorney's fees…" Section 18 further provides that "Owner's failure to re-rent to another tenant will not release or change Tenant's liability for damages."

16. Section 19 of the Lease provides "[i]f Tenant does not do everything Tenant has agreed to do, or if Tenant does anything which shows that Tenant intends not to do what Tenant agreed to do, Owner has the right to ask a Court to make Tenant carry out Tenant's agreement or to give the Owners such other relief as the Court can provide."

17. Section 20 provides that "Tenant must reimburse Owner for any of the following fees and expenses incurred by Owner," including "(iv) Any legal fees and disbursements for the preparation and service of legal notices; legal actions or proceedings brought by Owner against Tenant because of a default by Tenant under this Lease…"

18. Section 65 provides that "[n]otwithstanding anything to the contrary contained in this Lease, any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, inability to obtain services, labor, or materials or reasonable substitutes therefore, governmental

actions, civil commotion, fire or other casualty, and other causes beyond the reasonable control of the party obligated to perform, *except with respect to the obligations imposed with regard to the Payment of Rent and Additional Rent to be paid by Tenant pursuant to this Lease* (any of the foregoing "Force Majeure") shall excuse the performance of such party for a period equal to any such prevention, delay or stoppage." (emphasis supplied). Thus, notwithstanding any potential force majeure, Tenant's obligation to pay rent is not abated.

19. Section 80(i) (of the Rider) provides that "[i]n the event of default by Tenant in the failure to abide by the non-monetary and/or monetary obligations under this Lease and Landlord takes any action and/or commences any proceeding to enforce same, Tenant agrees to pay all reasonable attorney fees and costs incurred in connection with any such action or proceeding."

20. The parties executed the Lease, and Syndergaard's agent submitted the completed application and executed Lease to the condominium board on or about February 20, 2020. The condominium board approved the Lease.

21. 600 Summer performed all of its obligations to prepare the Leased Premises for Syndergaard's possession, including retaining professional cleaners in mid-March, just before Syndergaard was to move in, and purchasing certain furnishings for the apartment as requested by Syndergaard and/or his agent, since the Leased Premises were to be provided furnished.

22. Syndergaard thereafter abandoned the Lease and the Leased Premises, without justification, and despite 600 Summer performing all of its obligations to prepare the Leased Premises for Syndergaard's arrival.

23. On or about April 17, 2020, counsel for 600 Summer notified Syndergaard of his default under the Lease, including (i) Syndergaard's payment default of $27,000 due upon execution of the Lease; (ii) Syndergaard's failure to pay the security deposit of $27,000; (iii) Syndergaard's failure to pay the $17,000 broker commission; (iv) Syndergaard's failure to pay the April 1, 2020 rental installment of $9,000; (v) Syndergaard's failure to pay late fees for March and April; (vi) Syndergaard's failure to pay cable and utility fees and (vii) Synergaard's failure to pay interest due at the rate of 1.5% per month on all past due amounts.

24. After initially suggesting that Syndergaard might move in, and at various times acknowledging Syndergaard's obligations under the Lease, Syndergaard and his attorneys on April 30, 2020 informed 600 Summer that Syndergaard "has no intention of taking possession of the subject premises and the landlord is hereby free to re-rent it as he sees fit."

25. 600 Summer has placed the apartment back on the market, in an attempt to re-rent it, but has been unable to procure an acceptable tenant for the Leased Premises.

## First Claim for Relief: Breach of Contract

26. The Lease is a valid, enforceable contract, entered into by 600 Summer and Syndergaard, for valuable consideration.

27. 600 Summer performed all of its duties and obligations under the Lease.

28. Notwithstanding 600 Summer's performance of its obligations, Syndergaard abandoned the Lease and the Leased Premises, repudiated his obligations to 600 Summer, and has refused to make any of the required payments.

29. 600 Summer has been damaged in an amount to be determined at trial, in excess of $250,000.

**Second Claim for Relief: Attorneys Fees and Costs**

30. Under the terms of the Lease, 600 Summer is entitled to reimbursement for attorneys fees and costs incurred in connection with this Syndergaard's default under the Lease.

31. 600 Summer seeks recovery of an amount to be determined for reasonable attorneys fees and costs incurred in connection with this action.

WHEREFORE Plaintiff seeks judgment:

A. Awarding monetary damages, in an amount to be determined at trial, but in excess of $250,000;

B. Awarding attorneys fees, costs, and other expenses of litigation;

C. Such further and other relief as the Court may determine warranted.

New York, NY
May 21, 2020

        SLARSKEY LLC

        _____
        David Slarskey
        420 Lexington Avenue, Suite 2525
        New York, NY  10170
        (212) 658-0661
        *Counsel for Plaintiff*